

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § § | |
| **VS.** § § | **CASE NO. 9:07-CR-18** |
| **JAMES KERR KYLE, JR.** § § | |

### FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA BEFORE THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this matter to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3). *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On June 26, 2007, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the Defendant, James Kerr Kyle, Jr., on **Count I** of the charging **Information** [Clerk's doc. #2] filed in this cause.[1]  Count I of the Information charges

---

[1] Defendant also executed a *Waiver of Indictment*, which was addressed and filed in the record at the guilty plea hearing conducted by the undersigned.

that some time beginning in 2005, Defendant, James Kerr Kyle, Jr., committed bank fraud in violation of Title 18, United States Code, Section 1344(1). The Information also sets forth facts in support of the allegations against Kyle, including facts which support each essential element of the offense charged under Section 1344(1). *See Information; Elements of the Offense*.

Defendant, James Kerr Kyle, Jr., entered a plea of guilty to Count I of the Information into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a. That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b. That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

c. That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea. Upon addressing the Defendant personally in open court, the Court determines that Defendant's plea is voluntary and did not result from force, threats or promises. *See* FED. R. CRIM. P. 11(b)(2).

d. That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and

Defendant realizes that his conduct falls within the definition of the crime charged under 18 U.S.C. § 1344(1).

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the government presented the following evidence, which was admitted into the record at the plea hearing. *See Factual Resume.* If the case proceeded to trial, the Government and Defendant agreed that the Government would prove, beyond a reasonable doubt, each and every essential element of the charging offense charged in Count I of the Information. In support, the Government would establish, through sworn testimony and evidence, including expert witnesses, admissible exhibits, and documentary evidence, the following facts, as stated in the *Factual Resume:*

In 2005, the Defendant James Kerr Kyle, Jr. was employed as the General Manager of Trailer Connection, Inc., (TCI), a company in the business of retail sale and service of horse trailers. There were several TCI stores in Texas. In 2005, two stores were located in Madisonville, Texas, and Weatherford, Texas. Part of Kyle's job was to arrange for and manage TCI's lines of credit with various financial institutions. The lines of credit, which are also called floor plans or financing agreements, involved TCI borrowing money from the financial institution to enable TCI to obtain inventory to sell. One of these financial institutions was the First National Bank of Crockett (FNB). FNB is a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation. Its principal location is in Crockett, Texas, which is in the Eastern District of Texas. The floor plan agreement between TCI and FNB required TCI to properly maintain the horse trailers which served as the collateral for the floor plan,

provide FNB with accurate financial statements, and pay FNB the amount of money pledged on the floor plan for any horse trailer that was sold by TCI and financed by FNB. Kyle, as general manager, was principally responsible for accomplishing these tasks. In 2005, TCI continued to experience financial difficulties and operated at a financial deficit. Specifically, TCI did not have sufficient cash flow to maintain its business operations. Consequently, beginning on some date in 2005, KYLE began a practice of double collateralizing some of the horse trailers in TCI's inventory. For example, KYLE arranged for TCI to operate a separate floor plan agreement with General Electric Money Bank (GE). On three occasions, KYLE caused TCI to acquire horse trailers that were pledged as collateral on both the FNB and GE floor plan agreements. This practice enabled TCI to borrow twice the value of the horse trailer which was a violation of the FNB floor plan. Additionally, in those same three instances, KYLE caused TCI to engage in out of trust sales to retail customers. An out of trust sale is a retail sale of a collateralized horse trailer to a customer without TCI paying FNB the required amount of money as reflected in TCI's floor plan agreement with FNB. Typically, FNB would maintain the original manufacture statement of origin (MSO) for the horse trailer until the trailer is sold and FNB is paid, but Kyle also fraudulently acquired a substitute MSO which enabled the retail customer to obtain a title for the horse trailer. KYLE then kept the sales proceeds instead of paying them to FNB or GE. After the out of trust sales, KYLE caused FNB to be deceived concerning the whereabouts of the sold trailers when FNB personnel attempted to inspect the TCI inventory. The above-described scheme to defraud FNB involved three horse trailers, as further described in a chart made part of the original *Factual Resume*, on file in the record. In sum, Kyle defrauded FNB of $160,513.57

in committing the above-described scheme.

Defendant, James Kerr Kyle, Jr., agreed with the above-stated facts and signed the *Factual Resume.* Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty. The Defendant agreed with the evidence presented by the Government and personally testified that he was entering his guilty plea knowingly, freely and voluntarily.

## RECOMMENDED DISPOSITION

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offense charged in **Count I** of the charging **Information** on file in this criminal proceeding. The Court also recommends that the District Court conditionally accept the plea agreement.[2] Accordingly, it is further recommended that, Defendant, James Kerr Kyle, Jr., be finally adjudged as guilty of the charged offense under Title 18, United States Code, Section

---

[2]"(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

1344(1).

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report. At the plea hearing, the Court admonished the Defendant that the District Court may reject his plea and that the District Court can decline to sentence Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the presentence report because the sentencing guidelines are advisory in nature. The District Court may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report. *See* FED. R. CRIM. P. 11(c)(3). If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B). If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## **OBJECTIONS**

Within ten (10) days after receipt of this report, any party may serve and file written objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal

conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 4th day of July, 2007.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE